The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR18-162 JLR |
| Plaintiff, | GOVERNMENT'S TRIAL BRIEF |
| v. | |
| HANY VELETANLIC, | **TRIAL DATE:  February 25, 2019** |
| Defendant. | |

## I.  INTRODUCTION

On June 27, 2018, the grand jury returned an Indictment against the Defendant, Hany Veletanlic, charging him with four counts.  Count 1 charges the illegal exportation of a Glock lower receiver recovered in Sweden, in violation of the Arms Export Control Act, under 22 U.S.C. § 2778(b).  Counts 2 and 3 charge possession of an unregistered firearm, related to two silencers seized on July 25, 2017, and August 1, 2017, respectively, in violation of 26 U.S.C. § 5861(d) and 5845(a)(7).  Count 4 charges possession of a firearm with an obliterated serial number, related to a pistol possessed on May 3, 2018, in violation of 18 U.S.C. § 922(k).

The government is represented in this case by Matthew Diggs and Marie Dalton.  Mr. Veletanlic is represented by John Henry Browne and Craig Suffian.  Mr. Veletanlic's

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

trial is scheduled to start February 25, 2019. The government expects to call approximately 11 witnesses during its case-in-chief. The government anticipates that, assuming reasonable cross-examination, it will require no more than three trial days to present its case-in-chief.

## II. BACKGROUND

A. Facts

    1. **Swedish Seizure of a Glock Lower Receiver and Investigation Leading to Veletanlic.**

On February 22, 2017, Swedish authorities seized a Glock lower receiver from the residence of Thomas Heydeck in Fagersta, Sweden. A lower receiver is the part of the firearm that provides the housing for the internal components, and qualifies as a "firearm" under United States law. 18 U.S.C. § 921(a)(3). The serial number on the firearm had been removed; however, the receiver was stamped with the following Glock Data Matrix Code ("DMC"): 1534020919.

That same day, officers seized Mr. Heydeck's cell phone. The cell phone was subsequently searched and Swedish authorities recovered photographs of U.S. customs forms. The photographs of the forms had been sent via text message to Heydeck from the phone number of another phone seized and searched during the Swedish investigation. That phone – belonging to Robin Lavhage – contained Veletanlic's phone number listed in the contacts under the name "USA Barrel." Certain customs forms observed in Heydeck's phone would later be recovered from Snohomish County post offices from which the Defendant admitted to having sent firearms parts.

Through a review of its business records, Glock, Inc. ("Glock") was able to definitively link the DMC on the lower receiver with a specific serial number. Agents then traced the last recorded sale of the seized Glock firearm to N.N., an individual who resided in Seattle. The 4473 Form recording this sale shows that N.N. purchased the firearm on February 8, 2017. N.N. said that the Defendant was his friend, that they shot firearms together, traded firearms regularly, and that he considered Veletanlic an expert

UNITED STATES v. HANY VELETANLIC, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

in firearms. Shortly after purchasing the firearm, N.N. sold it to Veletanlic in an unrecorded sale.

N.N. called Veletanlic and told him that he had been visited by law enforcement agents asking about Veletanlic. The next day, Veletanlic called HSI Special Agent (SA) Glenn Karabeika, one of the agents who had interviewed N.N., and said he wanted to set up a meeting to talk about the shipment of guns. ATF SA Claudia Grigore and SA Karabeika arranged to meet with Veletanlic on May 31, 2017. Prior to speaking with Veletanlic, the agents advised him of his Miranda rights. Veletanlic agreed to waive those rights and spoke with the agents in a recorded interview.

### 2. Veletanlic's Statements Confessing to Firearms Exports.

Veletanlic said that he was an avid shooter and trader of guns. He said that approximately in January 2017, he posted a firearm part on eBay that was purchased by a man in Sweden. Veletanlic said that he shipped the part to the man, but did not recall the man's name. According to Veletanlic, the recipient of the firearm in Sweden contacted him outside of eBay and negotiated purchases of several more guns. The man instructed Veletanlic to obliterate the serial numbers from the lower receivers, to use fictitious return addresses, and to use different post offices to ship the guns to Sweden, all of which Veletanlic did. Veletanlic stated that, in total, he shipped "about eight packages of . . . random [firearms] parts" to recipients in Sweden. Veletanlic conceded he never obtained a license for any of the exports. Veletanlic was also asked about sending suppressors (silencers) overseas. He stated that "the law may change on that [silencers]," and that it is "actually easier to find suppressors overseas than it is . . . in the U.S."

Over the following weeks, Veletanlic exchanged numerous text messages and emails with the agents related to international firearms trafficking. In one of those emails, Veletanlic admits to a greater number of firearms shipments to Sweden than he had originally disclosed: "There has been about 15-20 small packages of parts in total. They also requested as many Glock 17 barrels as possible, I have sent about 5-6 of them. There has also been another G17 frame and slide." Veletanlic also disclosed that two of

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Swedish firearms recipients were Robin Lavhage and Thomas Heydeck, and provided the agents with screenshots of text messages between himself and Lavhage.

On July 25, 2017, agents again met with Veletanlic at his residence. Veletanlic admitted to sending firearms parts to two separate groups of individuals in Sweden, including approximately six 9mm pistols (the recovered Glock frame was for a 9mm firearm), 9mm ammunition, a Taurus pistol slide, and a Smith & Wesson firearms parts kit. He also stated that he had sent Glock magazines and parts to an individual in France. Veletanlic also admitted that the individual in France (whom he referred to as "Bruno") had provided him with two silencers in return for the Glock parts. He then falsely stated that he had destroyed the silencers after his initial contact with law enforcement in this matter.

### 3. Seizure of Two Silencers.

Also on July 25, 2017, Agents asked Veletanlic if they could look in his gun safe. During the examination of the contents of the safe, SA Grigore located a silencer in a bag on a shelf in the safe. Veletanlic admitted that the silencer was one of the two silencers that he had received from France, which he had previously claimed to have destroyed.

The next day, July 26, 2017, ATF agents again met Veletanlic at his residence. At that meeting, Veletanlic stated his desire to "come clean." Veletanlic disclosed that he still had the second silencer he had received from Bruno, which he voluntarily provided to ATF agents on August 1, 2017.

### 4. Arrest of Veletanlic and Seizure of Firearm with Obliterated Serial Number.

Veletanlic was arrested in May 2018 after displaying erratic behavior in communications with the agents. At the time of his arrest, Veletanlic was carrying a pistol with an obliterated serial number in his waistband. In a Mirandized statement following his arrest, Veletanlic acknowledged that the Ruger pistol he had been carrying had an obliterated serial number because it had been stolen.

### B. Pretrial Motions and Rulings.

The Defendant filed a Motion to Suppress the silencers, which was denied. Dkt.

UNITED STATES v. HANY VELETANLIC, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

68. The government has filed three Motions in Limine, which are pending. Dkt. 69, 71, and 73.

### III.  APPLICABLE LAW

**A.  The Elements of the Crimes and Anticipated Proof.**

    **1.  Violation of the Arms Export Control Act (Count 1).**

The Arms Export Control Act ("AECA") prohibits the export of defense articles and services that are designated by the President. *See* 22 U.S.C. § 2778(b)(2). The AECA provides for criminal penalties for willful violations of the Act. *See* 22 U.S.C. § 2278(c).

The Department of State, exercising for the President the above authority under the AECA, has promulgated the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. § 120.1 *et seq.* These regulations include the United States Munitions List, which consists of categories of defense articles and services that cannot be exported without a license issued by the Department of State's Office of Defense Trade Controls ("DDTC"). *See* 22 C.F.R. §§ 121.1, 123.1, 127.1. Category I of the United States Munitions List covers firearms and their components, including, specifically, receivers for firearms. 22 C.F.R.§ 121.1, Category 1(g).

The elements of a violation of the AECA are as follows: First, the defendant exported articles; Second, the articles were listed on the United States Munitions List at the time of export; Third, the defendant did so without obtaining a license from the State Department; and Fourth, the defendant acted "willfully," that is, he was aware that it was unlawful to export the goods from the United States. *See generally United States v. Chi Mak*, 683 F.3d 1126, 1131 (9th Cir. 2012) ("[T]he elements of an export control violation under 22 U.S.C. § 2778 are as follows: the (1) willful (2) export or attempted export (3) of articles listed on the [United States Munitions List] (4) without a license.").

In proving willfulness, the Ninth Circuit has clarified that the government need not show that the "the defendant had read, was aware of, or had consulted the specific regulations governing his activities." *Id.* at 1138. Rather, the government must only

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

prove that the defendant acted "with the purpose of violating a known legal duty" in attempting to export the items. *Id.; see also United States v. Roth*, 628 F.3d 827, 834 (6th Cir. 2011) (noting that "[m]ultiple circuits have interpreted willfulness as requiring a defendant to know generally that the act of exporting the underlying items is unlawful without requiring that the defendant know the items are on the Munitions List."); *cf. also United States v. Mousavi*, 604 F.3d 1084, 1094 (9th Cir. 2010) ("[W]e conclude that "willfulness" under the International Economic Emergency Powers Act [a similar export statute] requires the government to prove beyond a reasonable doubt that the defendant acted with knowledge that his conduct was unlawful, but not that the defendant was aware of a specific licensing requirement." (internal quotation omitted)); *United States v. Quinn*, 403 F. Supp. 2d 57, 64 (D.D.C. 2005) (same).

The government will offer testimony from the Swedish law enforcement officer who seized the Glock lower receiver from Mr. Heydeck's residence and observed the DMC, as well as from the Swedish officers who seized and searched Mr. Heydeck's cell phone and recovered the customs forms from the phone, and who observed Veletanlic's telephone number in the contacts of a related phone. The government will call Matt Chen from Glock who will describe how the DMC on the frame of a Glock firearm is linked, definitively, to a serial number; and who will testify that DMC 1534020919 is definitively linked to a firearm with serial number BATR295. The government will offer the record of the last recorded sale of this firearm to N.N. on February 8, 2017, as well as N.N.'s testimony that he sold the Glock in question to Veletanlic shortly after he purchased it. Additionally, in his initial meeting with the agents and subsequent communications, Veletanlic admits to sending firearms parts – including Glock lower receivers – to Heydeck and Lavhage in Sweden. Finally, the government will call Senior Analyst Wilbert "Pete" Walker from the Department of State, Directorate of Defense

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Trade Controls, who will testify that Veletanlic did not obtain a license to export the Glock receiver.

### 2. Possession of an Unregistered Firearm (Counts 2 and 3).

Counts 2 and 3 charge Mr. Veletanlic with possessing an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5845(7). 26 U.S.C. § 5861(d) makes it unlawful for any person "to . . . possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." For purposes of this section, "[t]he term 'firearm' [includes] . . . (7) any silencer (as defined in section 921 of Title 18 United States Code . . . ." 26 U.S.C. § 5845(a). The term "firearm silencer" means "any device for silencing, muffling, or diminishing the report of a portable firearm . . . ." 18 U.S.C. § 921(a)(24).

To convict Defendant of this offense, the government must prove beyond a reasonable doubt: (1) Defendant knowingly possessed a silencer, and (2) Defendant was aware that the silencer was a device for silencing, muffling, or diminishing the report of a portable firearm, and (3) the silencer was not registered to Defendant in the National Firearms Registration and Transfer Record. *See* Ninth Circuit Model Jury Instruction 9.34 (2010 Edition – Approved 9/2015). The government is not required to prove that Mr. Veletanlic knew of the legal requirement that the silencer be registered. *See id.; United States v. Summers,* 268 F.3d 683, 688 (9th Cir. 2001).

The government will prove that Mr. Veletanlic possessed a silencer through the testimony of officers who recovered the silencers on July 25, 2017 and August 1, 2017, respectively, as well as the testimony of an expert who will testify that the items in fact meet the legal definition of a silencer. It will prove Mr. Veletanlic's knowledge of the character of the devices through, among other things, Veletanlic's own statements, and the testimony of N.N, who used one of the silencers with Veletanlic at Veletanlic's residence. Finally, the government will introduce official records and witness testimony that establish that no silencer was registered to Mr. Veletanlic in the National Firearms Registration and Transfer Record.

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### 3. Possession of Firearm with an Obliterated Serial Number.

To convict Defendant of the final offense, possession of a firearm with an obliterated serial number, the government must prove beyond a reasonable doubt: (1) the Defendant knew that he had possessed a firearm as identified in the indictment, which had been shipped from one state to another; (2) the serial number of the firearm had been removed, obliterated or altered; and (3), the Defendant knew that the serial number had been removed, obliterated or altered. *See* Ninth Circuit Model Jury Instruction 8.68 (2010 Edition). To prove this count, the government will offer the firearm seized from Veletanlic at his arrest, as well as his statements that he removed serial numbers from the firearms he sent to Sweden, and that he knew the pistol he possessed at the time of his arrest had an obliterated serial number. ATF SA Claudia Grigore will testify that the Ruger pistol Veletanlic carried is an operable firearm and was manufactured outside the State of Washington.

## IV. LEGAL ISSUES

### A. Expert Witnesses.

The government expects to introduce testimony from two expert witnesses, whose identities and testimony all have been disclosed to defense counsel. The government's expert witnesses will be: (1) Claudia Grigore, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), an interstate-nexus expert, who will testify that the firearm charged in Count Four was manufactured outside the State of Washington;[1] and (2) Brian Heishman, a Firearms Enforcement Officer with ATF, who is an expert on the classification of firearms under the National Firearms Act. Heishman tested the silencers seized from the Defendant and will testify that they are devices for silencing, muffling, or diminishing the report of a portable firearm and therefore meet the legal definition of a silencer.

---

[1] SA Grigore was also a co-case agent in the investigation, and she will also testify as a fact witness. The government has proposed Ninth Circuit Model Instruction 4.15 (Dual Role Testimony), which should be given either prior to or after SA Grigore's testimony. *See United States v. Torralba-Mendia*, 784 F.3d 652, 659 (9th Cir. 2015).

UNITED STATES v. HANY VELETANLIC, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

This testimony is admissible pursuant to Federal Rule of Evidence 702, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto." The decision to admit expert testimony "is committed to the discretion of the [trial] court and will not be disturbed [on appeal] unless manifestly erroneous." *United States v. Kinsey*, 843 F.2d 383, 388 (9th Cir. 1988).

To the extent that an expert's testimony is based upon information obtained other than through personal observation, it is permissible if it is based upon information of the type reasonably relied upon by experts in forming expert opinions. *See United States v. Golden*, 532 F.2d 1244 (9th Cir. 1976) (holding it proper to admit DEA agent's testimony about market value of methamphetamine where that testimony was based in part upon information obtained from other undercover agents, because such information is of the type reasonably relied upon by experts determining prevailing prices in clandestine markets). The Ninth Circuit allows expert testimony regarding the identity of the manufacturer, and location of the manufacturer, to establish that a gun travelled in interstate commerce before the defendant received it. *United States v. Dunn*, 946 F.2d 615, 618 (9th Cir. 1991).

The defense has not disclosed any expert witnesses.

**B.  Statements of the Defendant.**

  **1.  Audio Recordings of Defendant's Statements.**

The government intends to offer into evidence a number of excerpts of two recorded interviews of the Defendant. Veletanlic made the statements after being advised of his Miranda warnings, and there has been no suggestion that the statements were somehow involuntary.

Such statements by a defendant are not hearsay when offered by the government against the speaker. Fed. R. Evid. 801(d)(2). However, the converse is not true; a defendant is not entitled to admit any of his own out-of-court statements. An out-of-court

UNITED STATES *v.* HANY VELETANLIC, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

statement of a declarant offered by the declarant on his own behalf is inadmissible hearsay because, among other things, it is not a statement by a party-opponent. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *see also Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-serving statements because such statements "are exactly the ones which people are most likely to make even when they are false").

The government may offer a transcript of one of the audio excerpts it introduces into evidence to the jury as a listening aid. The government has provided the transcripts to defense counsel. The Ninth Circuit has held that it is not an abuse of discretion for a court to allow jurors to view transcripts of recordings as listening aids where a participant in the conversation testifies that the transcripts are accurate, jurors are not permitted to look at the transcripts until the recordings are played, the transcripts are not admitted into evidence, and the district court instructs jurors that only the recordings are evidence and that, in the event of a discrepancy between the recording and the transcript the recording controls. *United States v. Booker*, 952 F.2d 247, 249 (9th Cir. 1991).

In this case, the government has provided copies of the transcripts that it intends to use to the witnesses through whom the government intends to play recordings, and those persons will testify that the transcripts are accurate. Before transcripts are distributed to the jury, the Court should read Model Ninth Circuit Jury Instruction 2.7, and, before subsequent recordings are played, the Court should remind the jury that only the recordings are evidence and that, if there are any discrepancies between recordings and transcripts, recordings control. *Id.* In addition, if defense counsel disputes the accuracy of the transcripts, the Court should review any disputed portions for accuracy. *See id.* at 248; *see also United States* v. *Turner*, 528 F.2d 143 (9th Cir. 1975) (permitting jurors to use transcripts again when jurors requested that tape recordings be replayed during their deliberation).

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### 2. Emails and Text Messages from the Defendant.

The government will also offer a few emails and text messages from the Defendant to law enforcement agents, as well as screenshots of text messages between the Defendant and Robin Lavhage, which Defendant provided to the agents. These written communications have been redacted to excise certain irrelevant and inflammatory statements, and proposed redacted versions will be provided to defense counsel. The emails may be authenticated a number of ways. The emails from the Defendant were written from his address of dingod1990@gmail.com. The text messages were sent or received from Veletanlic's phone number. The government will offer testimony from a witness that he or she received particular email or text message from the Defendant. This is sufficient to identify and authenticate an email. *See* Fed. R. Evid. 901(b)(1) (matter may be authenticated "testimony a matter is what it is claimed to be.").

## C. Other Out-of-Court Statements Offered for Non-Hearsay Purposes.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The admission of hearsay into evidence is generally proscribed by Rule 802. When it is relevant that an out of court statement was made, however, and the statement is offered exclusively to prove that it was made, it is not hearsay and is therefore admissible. *See Williams v. United States*, 458 U.S. 279 (1982). That is because statements not offered for their truth are not hearsay. Fed. R. Evid. 801(c).

In certain instances, the government may offer out-of-court statements not to prove the truth of the matters asserted, but merely to explain information possessed by, and the subsequent actions of, the investigative agents, law enforcement officers, and other witnesses. Because these statements will not be offered for the truth of the matter asserted, the statements would not constitute hearsay as defined by Rule 801(c). *See United States v. Mitchell*, 502 F.3d 931, 969 (9th Cir. 2007) (no error in allowing investigator testify about out-of-court statements from an informant that caused him to go to a certain location); *United States v. Munoz*, 233 F.3d 1117, 1134 (9th Cir. 2000) (no

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

error in allowing attorney to testify about out-of-court conversations with Michigan State investigators that caused him to send letter requesting that investment company sales personnel suspend investment sales); *United States v. Brown*, 923 F.2d 109, 111 (8th Cir. 1991) (out-of-court statement is not hearsay if offered for the limited purpose of explaining why a police investigation was undertaken).

**D.  Business Records.**

The government will introduce several types of business records at trial, through two means.  First, the Glock record linking the DMC of the seized firearm to a serial number will be offered through a live witness from Glock, Matt Chen.  Such testimony is sufficient both to meet the requirements of the business records exception to the hearsay rule, Fed. R. Evid. 803(6), and the authentication requirements of Fed. R. Evid. 901, as Mr. Chen is a custodian of the relevant records or an otherwise "qualified witness."  *See United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990) ("The phrase 'other qualified witness' is broadly interpreted to require only that the witness understand the record-keeping system.").  Any person familiar with the record-keeping practices of the business capable of identifying the record at issue as having been made in the ordinary course of business is a sufficient foundation witness.  Personal knowledge of the document is not required and does not affect its admissibility. *United States v. Pitman*, 475 F.2d 1335, 1337 (9th Cir. 1973).  Similarly, a record generated by a third party and received and relied upon, such as an invoice, becomes a business record of the company relying upon it.  *United States v. Childs*, 5 F.3d 1328, 1333-34 (9th Cir. 1993); *United States v. Doe*, 960 F.2d 221, 223 (1st Cir. 1992); *Saks Int'l, Inc. v. M/V Export Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987).   Finally, the query of a business database, and a report showing the output from that business database for use at trial does not take the record outside of Rule 803(6).  *See U-Haul Int'l v. Lumbermans Mut. Cas. Co.*, 5756 F.3d 1040, 1043 (9th Cir. 2009).

Second, the records of a sporting goods business—Precise Shooter—will be offered pursuant to a certification made by a competent custodian under Fed. R. Evid.

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

902(11). Copies of the records themselves, as well as the Rule 902(11) certification, have been provided to defense counsel, who have to date raised no objection to the admission of these materials.

**E.     Witnesses and Testimony Related to the Search of Government Databases.**

**1.     Directorate of Defense Trade Controls (DDTC) Record Search and Witness.**

The government will call Wilbert Walker at trial. Walker is Senior Analyst with Department of State, Directorate of Defense Trade Controls (DDTC). Walker is expected to testify (1) that a receiver for a firearm is a defense article listed on the munitions list (22 U.S.C. § 2278(b)(2) and 22 CFR 121.1); (2) that a person needs a State Department license in order to export any items on the Munitions List; and (3) that, after a search of License and Registration History maintained by the Department of State, neither Hany Veletanlic nor Thomas Heydeck sought or obtained such a license. In this case, Walker is being called to establish that the firearm component that was exported is in fact items subject to U.S. licensing requirements. In order for the jury to understand the relevance of Walker's testimony, the jury needs to have some basic understanding of the United States Munitions List. Walker had no role in the underlying investigation, and therefore will not be testifying about any of the underlying conduct in this case. Thus, he will not be offering any opinion as to any factual scenario.

**2.     National Firearms Registration and Transfer Record (NFRTR) and Witness.**

The government will offer three certified records signed by Tania Pleasants, an ATF Industry Operations Investigator, which state that she has custody and control of the National Firearms Registration and Transfer Record and that, after a diligent search, she found no evidence that either of the silencers seized from Veletanlic had been registered to him, or that any firearms requiring registration were registered in Veletanlic's name. The certified records include a public seal from ATF. The reports are self-authenticating domestic public document admissible under Federal Rule of Evidence 902(1). Nor are the records hearsay. *See* Fed. R. Evid. 803(10) (confirming that testimony about the

UNITED STATES v. HANY VELETANLIC, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

absence of a public record is not hearsay); *see also United States v. Combs*, 762 F.2d 1343, 1347-48 (9th Cir. 1985) (upholding the admissibility of a certified report regarding the absence of registration in National Firearms Registration and Transfer Record). Furthermore, testimony of the absence of a record does not implicate Federal Rule of Evidence 1002 (the "best evidence rule"). *United States v. Diaz-Lopez*, 625 F.3d 1198, 1200-1202 (9th Cir. 2010). In addition, Pleasants will testify at trial and thus will be available for any cross-examination regarding the contents of her certifications and her search generally.

F. **Swedish Cell Phone Evidence.**

The government will offer evidence recovered from two cell phones seized as part of the Swedish investigation of the recipients of the Defendant's firearms exports. The first cell phone was seized from Mr. Heydeck by Officer Erik Sesone, who will testify. The government will offer testimony from Forensic Examiner Joakim Henriksen, who copied the data from Heydeck's phone to a review platform using reliable methods, and from Patric Malmberg, who reviewed the data and recovered screenshots of U.S. Customs forms, which the government intends to offer.[2] The foundation for these exhibits will be established by the chain of custody and reference to a common seizure number at each step of the process. *See* Fed. R. Evid. 901(b)(1), (b)(9) (a matter may be authenticated by "evidence describing a process or system used to produce a result"). The officer who reviewed the data will testify that the screenshots were sent to Heydeck via text message from an individual with the contact "Lava" and a specific Swedish telephone number. That specific phone number belonged to another phone seized as part of the Swedish investigation, which Examiner Henriksen imaged and Officer Malmberg searched (second phone). This phone may be authenticated by its distinctive characteristics, specifically the identical photographs to those appearing on Heydeck's phone and the transmitting telephone number. *See* Fed. R. Evid. 901(b)(4). On the

---

[2] Four Swedish law enforcement officers may testify at trial. They are all fluent in English. The government will have a translator on stand-by if necessary however.

UNITED STATES v. HANY VELETANLIC, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

second phone, Officer Malmberg identified the same screenshots of customs forms that appeared on Mr. Heydeck's phone (among others), as well the Defendant's phone number listed in the phone's contacts under "USA Barrel". The phone number is not hearsay, as it is offered to link participants, not for the "truth" of any matter asserted. *See United States v. Chavez*, 229 F.3d 946, 954 (10th Cir. 2000) ("No 'truth' can be gleaned from a mere phone number and thus, the number could not have been submitted for the truth of the matter asserted.").

Veletanlic also provided the agents with screenshots of text messages exchanged between himself and the second phone number. Mr. Veletanlic identified the recipient of the text messages as Robin Lavhage. These text messages are admissible as statements of a party opponent, *see supra* Section IV(B)(2), and also serve to authenticate the evidence from the second phone.

**G.     Summary Exhibit for Customs Forms.**

The government intends to use and offer one summary chart as an exhibit showing information associated with certain U.S. Customs numbers seized from Mr. Heydeck's and Mr. Lavhage's cell phones, as well as the actual forms seized from various Washington State post offices. The information will include the listed sender, recipient, date of mailing, location of mailing, and listed item.

Federal Rule of Evidence 611, addressing the Mode and Order of the Interrogation of Witnesses, gives the Court great discretion in what a witness may use during testimony so as to "(1) make the presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time." Fed. R. Evid. 611(a); *see United States v. Gardner*, 611 F.2d 770,776 (9th Cir. 1980) (summary chart admissible in tax evasion case under Rule 611(a)); *United States v. Paulino*, 935 F.2d 739, 752-54 (6th Cir. 1991) (testimony of non-expert summary witness regarding cash generated from cocaine sales in drug conspiracy case admissible under Rule 611(a) where trial court gave limiting instruction and defense had full opportunity to cross-examine); *United States v. Scales*, 594 F.2d 558, 563-64 (6th Cir.1979) (summaries of testimonial evidence designed "to aid

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR  
GOVERNMENT'S TRIAL BRIEF - 15

UNITED STATES ATTORNEY  
700 STEWART STREET, SUITE 5220  
SEATTLE, WASHINGTON 98101  
(206) 553-7970

the jury in its examination of the evidence already admitted" do not come within Rule 1006, but are authorized by Rule 611(a)); *see also* 5 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence, at ¶ 1006[03] (summary "prepared by a witness from his own knowledge to assist the jury in understanding or remembering a mass of details is admissible, not under Rule 1006, but under such general principles of good sense as are embodied in Rule 611(a)"). The substantive content must be authenticated, but that may be done by the summary witness, if the witness has reviewed the underlying evidence. Fed. R. Evid. 901; *United States v. Soulard*, 730 F.2d 1291, 1299 (9th Cir. 1984). Moreover, Rule 1006 allows for the summaries of voluminous materials to be admissible and used as substantive evidence, rather than solely as demonstrative evidence. *See United States v. Meyers*, 847 F.2d 1408, 1411 12 (9th Cir. 1988) (admitting summary of otherwise admissible evidence as substantive evidence where the summary contributed to the clarity of the presentation). The summary the government intends to offer as an exhibit will be produced to defense counsel in advance of trial and all underlying documents have been produced in discovery.

**H.     Exclusion of Witnesses.**

Pursuant to Rule 615 of the Federal Rules of Evidence, the government requests that witnesses be excluded from the courtroom, with the exception of Special Agent Glenn Karabeika, who is one of the case agents. *United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir. 1987); *see also United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989).

**I.     Firearm Evidence.**

The government will introduce the firearm seized from Veletanlic on May 3, 2018 and the two seized silencers. The firearm has been rendered safe by ATF, and the government asks the Court to inform the jury of this. At trial, the government expects that the only witness whose testimony will require the actual firearm is Special Agent Grigore. After her testimony, the government proposes that the firearm be placed on a table, so the jury may observe the exhibit. The silencers will be used with two witnesses

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(SA Grigore and Brian Heishman), and should also be temporarily placed on a table for observation after Agent Grigore's testimony. The government will coordinate with the U.S. Marshall's Service and the Court to ensure that all necessary safety precautions are taken with this evidence.

**J.  Forfeiture.**

The firearm and silencers that were identified for forfeiture in the Indictment have been administratively forfeited by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. Thus, there is no need to address forfeiture during the trial.

## V.  CONCLUSION

The government is not aware of other legal issues that are likely to arise during the course of this trial. If other issues do arise, the government will address those issues by way of a supplemental brief or briefs.

DATED February 15, 2019.

Respectfully submitted,

BRIAN T. MORAN
United States Attorney

*/s/ Matthew D. Diggs*
MATTHEW D. DIGGS, WSBA #36331
*/s/ Marie M. Dalton*
MARIE M. DALTON
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone:  (206) 553-2260
Fax:  (206) 553-2502
Email:  matthew.diggs@usdoj.gov
            marie.dalton2@usdoj.gov

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2019, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the attorney of record for the defendant.

*/s/ Becky Hatch*
BECKY HATCH
Legal Assistant
United States Attorney's Office
700 Stewart Street, 5220
Seattle, Washington 98101
Phone: (206) 553-4161
Fax: (206) 553-0755
Email: becky.hatch@usdoj.gov

*UNITED STATES v. HANY VELETANLIC*, CR18-162 JLR
GOVERNMENT'S TRIAL BRIEF - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970